UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| CHISESI BROTHERS MEAT PACKING COMPANY, INC. AND CHISESI MEAT PACKING COMPANY, L.L.C. | CIVIL ACTION<br>No. 09-6523 |
| VERSUS | SECTION I/3 |
| WESTCHESTER SURPLUS LINES INSURANCE COMPANY | |

## ORDER AND REASONS

Before the Court is a motion *in limine* filed on behalf of defendant, Westchester Surplus Lines Insurance Company ("WSLIC"), to exclude the expert witness opinion and testimony of plaintiff's expert, Sidney J. Chaisson, Jr. ("Chaisson"), with regard to causation.[1] Plaintiff has filed an opposition.[2] For the following reasons, defendant's motion *in limine* is **DENIED**.

## *BACKGROUND*

Plaintiffs, Chisesi Brothers Meat Packing Company, Inc. and Chisesi Meat Packing Company L.L.C. (together "Chisesi"), own property in the Parish of Jefferson, Louisiana, that was damaged when Hurricane Gustav struck the Louisiana Gulf Coast on or about September 1, 2008.[3] During the relevant time period, Chisesi maintained an insurance policy on the property with WSLIC.[4] Chisesi alleges that, as a result of Hurricane Gustav, they sustained property, structural and equipment damage, as well as business interruption.[5]

---

[1] R. Doc. No. 25.
[2] R. Doc. No. 26.
[3] R. Doc. No. 1, compl. ¶¶6,9.
[4] *Id.* ¶6.
[5] *Id.* ¶¶13,19.

1

Chisesi filed this lawsuit on September 25, 2009, filing claims against WSLIC pursuant to La. Rev. Stat. Ann. §§ 22:1892 and 1973 for breach of contract, breach of its duty to remit payment promptly, breach of its duty to fairly and promptly adjust claims, and breach of its duty of good faith and fair dealing.[6] Chisesi argues that WSLIC, after receiving satisfactory proof of loss, arbitrarily and capriciously failed to pay the amount of the claim due within thirty days, for purposes of §22:1892, or sixty days, for purposes of §22:1973.[7] Chisesi further alleges breach of the insurance contract, a violation of La. Civil Code article 1997.[8]

On August 24, 2010, WSLIC filed this motion *in limine* seeking to exclude the testimony of Chisesi's damage expert, Chaisson, regarding causation of damage to the roof of Chisesi's property.[9] WSLIC argues that Chaisson's opinions as to causation should be excluded because Chaisson did not undertake any independent, scientific analysis to form his opinions.[10] WSLIC also argues that Chaisson's opinion is based on assumptions and the unsupported statements of plaintiff's representatives.[11] WSLIC contends that because of the unreliability and insufficiency of facts supporting Chaisson's opinion, Chaisson's testimony regarding causation should be excluded.[12]

*LAW AND ANALYSIS*

I. **STANDARD OF LAW**

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert witness testimony. Fed. R. Evid. 702; *see Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 588, 113

---

[6] *Id.* ¶¶22-27.
[7] *Id.* ¶¶24-27.
[8] *Id.* ¶23.
[9] R. Doc. No. 25.
[10] R. Doc. No. 25-1, mem. supp. at p.1.
[11] *Id.* at p.1-2.
[12] *Id.* at p.16.

2

S.Ct. 2786, 2794, 125 L.Ed.2d 469, 480 (1993); *United States v. Hitt*, 473 F.3d 146, 148 (5th Cir. 2006). Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The United States Supreme Court's decision in *Daubert* "provides the analytical framework for determining whether expert testimony is admissible under Rule 702." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243 (5th Cir. 2002). Both scientific and nonscientific expert testimony is subject to the *Daubert* framework, which requires trial courts to make a preliminary assessment to "determine whether the expert testimony is both reliable and relevant." *Burleson v. Tex. Dep't of Criminal Justice*, 393 F.3d 577, 584 (5th Cir. 2004); *see Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147, 119 S.Ct. 1167, 1174, 143 L.Ed.2d 238, 249-50 (1999).

A number of nonexclusive factors may be relevant to the reliability inquiry, including: (1) whether the technique has been tested, (2) whether the technique has been subjected to peer review and publication, (3) the potential error rate, (4) the existence and maintenance of standards controlling the technique's operation, and (5) whether the technique is generally accepted in the relevant scientific community. *Burleson*, 393 F.3d at 584. The reliability inquiry must remain flexible, however, as "not every *Daubert* factor will be applicable in every situation; and a court has discretion to consider other factors it deems relevant." *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004); *see Runnels v. Tex. Children's Hosp. Select Plan*, 167 Fed. App'x 377, 381 (5th Cir. 2006) ("[A] trial judge has 'considerable leeway' in determining 'how to test an expert's reliability.' " (citing *Kumho Tire*, 526 U.S. at 152, 119 S.Ct. at 1176, 143

L.Ed.2d at 253)). "Both the determination of reliability itself and the factors taken into account are left to the discretion of the district court consistent with its gatekeeping function under [Rule] 702." *Munoz v. Orr*, 200 F.3d 291, 301 (5th Cir. 2000). The Court notes that when a judge sits as the trier of fact, rather than a jury, the *Daubert* limitations are relaxed. *Gibbs v. Gibbs*, 210 F.3d 491, 500 (5th Cir. 2000).

With respect to determining the relevancy of an expert's testimony pursuant to Rule 702 and *Daubert*, the proposed testimony must be relevant "not simply in the way all testimony must be relevant [pursuant to Rule 402], but also in the sense that the expert's proposed opinion would assist the trier of fact to understand or determine a fact in issue." *Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d 581, 584 (5th Cir. 2003). " 'There is no more certain test for determining when experts may be used than the common sense inquiry whether the untrained layman would be qualified to determine intelligently and to the best degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute.' " *Vogler v. Blackmore*, 352 F.3d 150, 156 n.5 (5th Cir. 2003) (quoting Fed.R.Evid. 702 advisory committee's note).

When expert testimony is challenged under *Daubert*, the burden of proof rests with the party seeking to present the testimony. *Moore v. Ashland Chemical, Inc.*, 151 F.3d 269 (5th Cir. 1998). To meet this burden, a party cannot simply rely on its expert's assurances that he has utilized generally accepted scientific methodology. Rather, some objective, independent validation of the expert's methodology is required. *Id.* Nonetheless, as Judge Vance stated in *Scordill v. Louisville Ladder Group, L.L.C.*, 2003 WL 22427981 at *3 (E.D. La. October 24, 2003):

> The Court notes that its role as a gatekeeper does not replace the traditional adversary system and the place of the jury within the

> system. *See Daubert*, 509 U.S. at 596. As the *Daubert* Court noted, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id.* (citing *Rock v. Arkansas*, 483 U.S. 44, 61, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987)). The Fifth Circuit has added that, in determining the admissibility of expert testimony, a district court must defer to " 'the jury's role as the proper arbiter of disputes between conflicting opinions. As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration.' " *United States v. 14.38 Acres of Land, More or Less Sit. in Leflore County, Miss.*, 80 F.3d 1074, 1077 (5th Cir. 1996) (quoting *Viterbo v. Dow Chemical Co.*, 826 F.2d 420, 422 (5th Cir. 1987).

## II. DISCUSSION

WSLIC urges that Chaisson is not qualified to testify as to causation in this case. *i.e.*, that all of the damage to the roof was caused by Hurricane Gustav. WSLIC challenges Chaisson's testimony, arguing that Chaisson's methodology is flawed because he began his analysis with a presumption that Hurricane Gustav caused the damage to the Chisesi property.

WSLIC contends that Chaisson's original task was merely to determine the extent of problems relating to icing in the freezer on premises. Later, the role was expanded to determine the extent of damage to the roof and to recommend proper remediation for those issues, but Chaisson was never tasked with determining causation. WSLIC argues that because Chaisson went into this project with the assumption that Hurricane Gustav caused all of the damage to the building's roof, he did not conduct a proper scientific investigation into the cause of the damage. For these reasons, WSLIC seeks to exclude testimony by Chaisson concerning causation as inadmissible under Rule 702 of the Federal Rules of Evidence.

In support of its motion, WSLIC points to Chaisson's testimony during his deposition in which he admits that he went into his investigation of the Chisesi premises with the assumption

5

that the damage was caused by Hurricane Gustav.[13] WSLIC also points to statements where Chaisson admits that one of the bases for this assumption came from plaintiffs' representations that the damage was caused by Hurricane Gustav.[14] WSLIC contends that these statements indicate that the basis for Chaisson's opinion is inadequate under *Daubert* and its progeny.

To determine the admissibility of Chaisson's expert opinion, the Court looks to the reliability and relevancy of his testimony. *Burleson*, 393 F.3d at 584. With regard to the reliability of Chaisson's opinion, WSLIC has made one primary argument: Chaisson's reliance on his initial assumption rendered his opinion scientifically unsound. However, this argument ignores the rest of the investigation Chaisson conducted. Having reviewed those portions of Chaisson's deposition testimony submitted by the parties, it is clear to the Court that Chaisson, when opining as to the cause of the damage to plaintiffs' property, relied on more than just the statements of other persons. Notwithstanding Chaisson's initial assumptions relative to the cause of any damage, he did consider other personal observations and tests when arriving at his conclusions relative to causation.

WSLIC's arguments with regard to Chaisson's opinion are in fact attacks on the credibility of Chaisson's testimony. As stated above, "as a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration." *14.38 Acres of Land, More or Less Sit. in Leflore County, Miss.*, 80 F.3d at 1077. WSLIC has attempted to undermine the validity of the bases and sources of Chaisson's opinions by alleging that Chaisson conducted his investigation with a biased mindset. But this effort goes to the credibility, not the admissibility, of Chaisson's opinion. *See Voth v. State Farm Fire and Casualty Insurance Company*, No.

---

[13] R. Doc. No. 25-4, pp.24-27,
[14] *Id.* pp. 12, 41.

07CV4393, 2009 WL 411459, at *6 (E.D. La February 17, 2009) ("The original reliance on the incorrect facts goes to the weight of his testimony not the admissibility of the testimony itself."). Trial, not a motion *in limine*, is the proper forum for WSLIC to undertake "vigorous cross-examination [and] presentation of contrary evidence . . . attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

WSLIC also argues that because Chaisson admitted that he was unable to prove that some of the damage, specifically moisture found in core samples, resulted from Hurricane Gustav, his opinion regarding causation is inadmissible.[15] The fact that Chaisson cannot pinpoint the cause of all the moisture damage does not mandate excluding his entire testimony. *See Voth*, 2009 WL 411459 at *6. "It is up to the Court to assign the appropriate amount of weight to the testimony given the lack of proof on this point. Additionally, there may well be other evidence at trial that will enlighten the Court on this point." *Id.* The Court will ultimately reach a decision as to whether Hurricane Gustav caused the damage to the Chisesi property and, if so, the amount of that damage, but it will make that decision after hearing all of the evidence, not just the testimony of Chaisson.

WSLIC further argues that Chaisson's failure to eliminate other possible causes of the damage renders his opinion unreliable. WSLIC points to Chaisson's admission that he did not examine any meteorological data in the form of wind maps or weather reports.[16]

Elimination of alternative possibilities is one method of arriving at a result reliably, but it is not the only method. It is possible to choose the correct explanation at the outset and have all the collected data support that explanation. Chaisson "thought [he] had the right conclusion, so

---

[15] R. Doc. No. 25, p.13.
[16] R. Doc. No. 33, p.9 n.37.

[he] didn't go and eliminate other causes."[17] While Chaisson's failure to eliminate other possible causes may undercut the strength of his opinion, it does not affect the admissibility of that opinion. Chaisson has a basis for his opinions. Whether or not that basis is a convincing one is a question left to this Court. "The perceived flaws in Chaisson's testimony are matters properly to be tested in the crucible of adversarial proceedings; they are not the basis for truncating that process." *14.38 Acres of Land, More or Less Sit. in Leflore County, Miss.*, 80 F.3d at 1079.

For the foregoing reasons,

**IT IS ORDERED** that defendant's motion *in limine* to exclude Chaisson's expert testimony is **DENIED.**

New Orleans, Louisiana, September 9, 2010.

	**LANCE M. AFRICK**
	**UNITED STATES DISTRICT JUDGE**

---

[17] R. Doc. No. 25-4, p.40.